FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 07, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

ALISA S.,[1]

                    Plaintiff,

          v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

                    Defendant.

No.    4:23-cv-191-EFS

**ORDER REVERSING THE ALJ'S
DENIAL OF BENEFITS AND
REMANDING FOR ADDITIONAL
PROCEEDINGS**

Plaintiff Alisa S. claims she is unable to work fulltime because of anxiety, depression, posttraumatic stress disorder (PTSD), emotional issues, and memory issues. She appeals the denial of disability-insurance benefits by the Administrative Law Judge (ALJ) on the grounds that the ALJ improperly evaluated Plaintiff's symptom reports and the medical opinions and crafted an incomplete RFC. As is explained below, the ALJ erred. This matter is remanded for further proceedings.

_____

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

1

## I.    Background

2    Plaintiff filed for benefits under Title 2, claiming disability beginning

3   December 9, 2019.[2] After the agency denied benefits, ALJ Jesse Shumway held a

4   telephone hearing in January 2022, at which Plaintiff and a vocational expert

5   testified.[3]

6    Forty-seven-year-old Plaintiff testified that, after a fight with her then-

7   husband, she went to jail and then had to stop her career working in casinos

8   because her gaming license was suspended.[4] After these turbulent events, her

9   mental health declined and she now feels "like crap all the time," her body aches all

10  over, she is unable to walk far, she primarily stays home because she does not

11  spend time with other people and she lives a long ways out of town, she has

12  troubles concentrating and remembering things, she forgets to feed her cat, she

13  does not regularly shower as she needs reminders to do personal care tasks, she

14  has difficulty filling out medical paperwork, she does not watch television shows or

15  movies, and she spends her day looking out the window.[5] Plaintiff stated that she

16  has health insurance through the tribe and the State of Washington and that she

17  "guess[ed]" she could pay for treatment but services were 20–25 miles away and

18  _____

19  [2] AR 194–200.

20  [3] AR 104–10, 45–68.

21  [4] AR 57–58.

22  [5] AR 51–57.

23

1    she has transportation difficulties because she lives alone and has no car or driver's

2    license.[6] If she goes to the store, she has someone take her and help her find

3    things.[7]

4         The ALJ issued a decision denying benefits.[8] The ALJ found Plaintiff's

5    alleged symptoms were "not entirely consistent with the medical evidence and

6    other evidence in the record."[9] Likewise, the ALJ discounted Plaintiff's mother's

7    statement.[10] As to medical opinions, the ALJ found:

8         • the reviewing opinions of Carol Moore, PhD, and Renee Eisenhauer,

9           PsyD, persuasive.

10        • the reviewing opinions of Norman Staley, MD, and Ruth Childs, MD,

11          not persuasive.

12

13

14

15   _____

16   [6] AR 56–59. *See also* AR 74, 406.

17   [7] AR 55–56.

18   [8] AR 23–40. Per 20 C.F.R. § 404.1520(a)–(g), a five-step evaluation determines

19   whether a claimant is disabled.

20   [9] AR 32. As recommended by the Ninth Circuit in *Smartt v. Kijakazi*, the ALJ

21   should consider replacing the phrase "not entirely consistent" with "inconsistent."

22   53 F.4th 489, 499, n.2 (9th Cir. 2022).

23   [10] AR 34.

- the examining opinion of Lynette Schultz, PsyD, HSPP, partially persuasive.[11]

As to the sequential disability analysis, the ALJ found:

- Plaintiff met the insured status requirements through December 31, 2024.

- Step one: Plaintiff had not engaged in substantial gainful activity since December 9, 2019, the alleged onset date.

- Step two: Plaintiff has the following medically determinable severe impairments: major depressive disorder, panic disorder, and PTSD.

- Step three: Plaintiff does not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff can perform a full range of work at all exertional levels, but is "limited to simple, routine, repetitive tasks and occasional, superficial contact with the public and coworkers."

- Step four: Plaintiff is unable to perform past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff can perform work that existed in significant numbers

---

[11] AR 33–34.

in the national economy, such as hospitality food service worker,

cleaner II, and laundry worker.[12]

Plaintiff timely requested review of the ALJ's decision by the Appeals

Council and now this Court.[13]

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial

evidence or is based on legal error,"[14] and such error impacted the nondisability

determination.[15] Substantial evidence is "more than a mere scintilla but less than

a preponderance; it is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."[16]

---

[12] AR 26–36.

[13] AR 1–8.

[14] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

[15] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

[16] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

## III.   Analysis

Plaintiff argues the ALJ erred by rejecting her symptom reports, when evaluating the medical opinions, and by crafting an incomplete RFC. The Commissioner argues that substantial evidence supports the ALJ's evaluation of the evidence and the crafted RFC. As is explained below, the ALJ erred when evaluating Plaintiff's reported mental-health symptoms.

**A.   Symptom Reports: Plaintiff establishes consequential error.**

Plaintiff argues the ALJ failed to provide valid reasons for discounting her physical and mental symptom reports. As is discussed below, the ALJ's reasons for discounting Plaintiff's mental-health symptoms are not clear and convincing reasons supported by substantial evidence.[17]

1.   <u>Standard</u>

The ALJ must identify what symptom claims are being discounted and clearly and convincingly explain the rationale for discounting the symptoms with supporting citation to evidence.[18] This requires the ALJ to "show his work" and

---

simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[17] Because the ALJ erred when evaluating Plaintiff's mental-health symptoms, the Court does not address the ALJ's evaluation of Plaintiff's physical symptoms.

[18] *Smartt*, 53 F.4th at 499.

1    provide a "rationale . . . clear enough that it has the power to convince" the

2    reviewing court.[19] Factors the ALJ may consider when evaluating the intensity,

3    persistence, and limiting effects of a claimant's symptoms include: 1) objective

4    medical evidence, 2) daily activities; 3) the location, duration, frequency, and

5    intensity of pain or other symptoms; 4) factors that precipitate and aggravate the

6    symptoms; 5) the type, dosage, effectiveness, and side effects of any medication the

7    claimant takes or has taken to alleviate pain or other symptoms; 6) treatment,

8    other than medication, the claimant receives or has received for relief of pain or

9    other symptoms; and 7) any non-treatment measures the claimant uses or has used

10   to relieve pain or other symptoms.[20]

11         2.    Analysis of the ALJ's reasons

12         The ALJ found Plaintiff's statements concerning the intensity, persistence,

13   and limiting effects of her medically determinable impairments "not entirely

14   consistent" with the objective medical evidence, the lack of treatment and

15   noncompliance with treatment, that her last job ended for a non-disability reason,

16   and the lack of a medical opinion endorsing disabling physical or mental

17

18

19

_____

20   [19] *Id.* (alteration added).

21   [20] 20 C.F.R. § 404.1529(c)(2), (3). *See also* 3 Soc. Sec. Law & Prac. § 36:26,

22   Consideration of objective medical evidence (2019).

23

                                                              DISPOSITIVE ORDER - 7

limitations.[21] As discussed below, these reasons fail to serve as clear and convincing reasons to discount Plaintiff's reported mental-health symptoms.

>            a.    *Objective medical evidence*

Objective medical evidence is a relevant factor for the ALJ to consider when assessing a claimant's symptoms.[22] An ALJ may consider discrepancies between a claimant's reported symptoms and the observations of treatment providers and examiners.[23] While an ALJ may not "reject a claimant's subjective complaints based *solely* on lack of medical evidence to *fully corroborate*" the reported symptoms, the ALJ may discount symptom complaints that are *inconsistent* with the objective medical evidence, so long as the ALJ explains why the objective medical findings are inconsistent with the claimant's symptoms.[24]

The medical record, which spans from January 2019 to December 2021, contains relatively few medical records, as compared to other social security case files. There are treatment notes pertaining to a cold and elbow, rib, hip, and left

---

[21] AR 32–33.

[22] 20 C.F.R. § 404.1502(f); 3 Soc. Sec. Law & Prac. § 36:26, Consideration of objective medical evidence (2019).

[23] *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

[24] *Smartt*, 53 F.4th at 498 (quoting *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (emphasis added in *Smartt*)).

knee pain; summaries and treatment notes from behavioral health treatment; and the consultative psychological examination report.

i.    *Dr. Schultz's consultative psychological examination*

Dr. Lynette Schultz conducted a consultative psychological examination in October 2020 at the request of the Social Security Administration.[25] Her examination included a clinical interview, mental status examination, and a review of progress notes from February and June 2020.[26] Plaintiff advised that she separated from her husband of less than three months, that he had been physically and emotionally abusive, and after he reported her to police for assault she lost her gaming license and job at the casino.[27] She reported that she had been prescribed medication for anxiety but "barely got a refill," and was not currently participating in mental-health services because she did not have transportation, and that she had difficulty with trust, persistent worry, nervousness, racing thoughts, intrusive thoughts, concentrating, focusing, distractibility, recall, irritability, and agitation.[28]

---

[25] AR 344.

[26] AR 344–48. The medical records from February and June 2020 in the record pertain to treatment for Plaintiff's right elbow pain, wherein Plaintiff was observed with appropriate mood and affect but she reported daily unhappiness and mental-health treatment was recommended. AR 322–32.

[27] AR 344–45.

[28] AR 345.

Dr. Schultz observed Plaintiff with minimal hygiene, dirty hair, adequate eye contact, tense posture, cooperative behavior, appropriate attitude, and a significantly anxious affect and as tearful, distraught, and alert and orientated with the exception of the date.[29]

Dr. Schultz found Plaintiff's remote, recent, and immediate memory to be impaired, her cognitive abilities to be below average, and her judgment adequate.[30] Dr. Schultz diagnosed Plaintiff with major depressive disorder (recurrent, moderate with moderate anxious distress), PTSD, and panic disorder, and opined that Plaintiff "appear[ed] able to complete simple, repetitive tasks," but her:

> ability to follow and carry out complex instructions and respond adequately to changes in routine work settings would likely be hindered by her current, persistent symptomatology, particularly her difficulty with anxiety and additional symptoms of PTSD. Social interaction would likely be inadequate as she reports increased anxiety and agitation when interacting with others, including panic attacks. She would likely struggle in adapting her routine in a workplace setting to incorporate new functions or processes that are outside her comfort level due to her anxiety, and the aforementioned deficits.[31]

---

[29] *Id.*

[30] AR 345–46.

[31] AR 347.

1

### ii.    *Mental-health therapy records*

2        Plaintiff participated in therapy with Thomas Lilly, LICSW, from March 2,

3    2021, to June 24, 2021, and with Scott Redden and Liz Hernandez in December

4    2021.[32] The record does not include contemporaneous treatment notes from

5    Counselor Lilly, but it does contain two summaries he authored. One summary,

6    which was after six treatment sessions, states:[33]

7    OBSERVATIONS:
     Ms. S█████ has had significant challenges with her capacity to create and develop a therapeutic
8    connection. Her excruciating identification with being a victim, her anger at others, her refusal to
     take responsibility for change and her self-defeating behavior have been troublesome. Her way of
     being in the world now is trauma based. It is hoped that she will remain involved in the helping
9    relationship long enough to become motivated to accept personal responsibility, extricate herself
     from legal trouble and get some insight into the benefit of mental health treatment.

10   MENTAL STATUS EXAM:
     This finding is a composite of six sessions. Ms S█████ has been seen twice in the clinic and the
11   other sessions have been by phone. She was oriented x4; mood was often upset, frustrated,
     desperate; thought process/content characterized by blaming, perseverating on victim role,
12   justifying lack action to resolve problems; judgment/insight impaired; no evidence of SI/HI or
     grave disability. In the last assessment session she began to temper the intense emotional
13   distress that characterized our previous sessions, which is very encouraging.

14   Counselor Lilly stated:

15            The precipitating factors in her downfall involve a bad marriage and
          villainous behavior by her husband. Once her descent began she
16        seems to have reverted to a trauma-based survival mode which is
          rigid and primitive. . . She has been very prone to go off on a rant and
17        become angry and aggressive. All rationality is lost. She refuses any
          effort to ameliorate the damage. . . There is some indication that she
18        began to moderate her most offensive patterns and mellow out a little

19

─────────────────────

20   [32] The Court was unable to find a record indicating Scott Redden's and

21   Ms. Hernandez's medical training or credentials.

22   [33] AR 362.

23

during our interactions. Actual trauma informed treatment would become possible if she can stabilize a bit.[34]

Counselor Lilly wrote the second summary after sixteen sessions with Plaintiff, two in person and fourteen telehealth sessions due to transportation issues, with sessions ending on June 24, 2021, due to Plaintiff's unavailability "for reasons that remain unclear."[35] Counselor Lilly noted that telephone contact was made about other issues, such as "connecting with ancillary services, seeking transportation liaising with her probation officer, or speaking with her mother."[36] Counselor Lilly found that Plaintiff "suffered from a serious inability to function which appeared completely immobilizing at times," as "[m]ultiple legal entanglements seemed intractable to her and a rigid sense of fairness and justice [e]nsured that she would not participate in what she felt was a corrupt process. She retreated into herself and felt estranged, victimized, hopeless and powerless to affect any change."[37] Counselor Lilly observed that Plaintiff was "easily triggered and her projections of anger and blame were clearly self-defeating."[38] He stated it was his "hope . . . that she might recover enough to work in some capacity in the

---

[34] AR 363.

[35] AR 364.

[36] *Id.*

[37] *Id.*

[38] *Id.*

DISPOSITIVE ORDER - 12

future. [But] it was clear from the outset that recovery could be a long process."[39] Counselor Lilly recognized that Plaintiff had been unable to begin trauma therapy because she was not stable cognitively nor emotionally.[40]

The record contains three contemporaneous therapy notes from other therapists in December 2021. During the initial session with Scott Redden, he observed Plaintiff as disheveled, older than her staged age, with a very agitated mood, aggressive and elevated affect, tangential and logical thought process, poor/good eye contact, clear/coherent and fast speech, and behavior that was agitated, cooperative, and reflected flight of ideas.[41] Mr. Redden found Plaintiff's memory normal, insight fair, judgment unimpaired, and attention/concentration decreased with difficulty focusing. Mr. Redden noted that Plaintiff's GAD7 score was 21 and PHQ9 score was 27—scores that reflect severe anxiety and depression.[42] He referred Plaintiff to a high level of care and alerted crisis response.[43]

During the next day's therapy session with Ms. Hernandez, Ms. Hernandez observed that Plaintiff was orientated with good hygiene, clear but fast speech,

---

[39] *Id.*

[40] AR 365–65.

[41] AR 410–11, 413.

[42] AR 411.

[43] AR 412.

guarded mood, irritable affect, and cooperative behavior with some redirection.[44]
Ms. Hernandez noted that she would "begin huddle conversation through Slack
with care team due to complexity of case."[45] During the therapy session the
following week, Ms. Hernandez noted that Plaintiff had good hygiene and was
appropriately dressed with clear and fast speech and that her mood was guarded,
affect irritable, and behavior cooperative with some redirection needed due to flight
of ideas.[46]

### iii.    The ALJ's findings

When evaluating Plaintiff's mental-health symptom complaints, the ALJ
mentioned that Plaintiff "rarely presented with an angry/irritable mood and
affect."[47] The ALJ further stated that Plaintiff presented "with a normal mood and
affect, normal memory, and normal judgement during most medical appointments,"
she was "able to interact cooperatively with some redirection needed because of
flight of ideas," and that she "demonstrated good hygiene during recent counseling
sessions."[48]

---

[44] AR 407.

[45] AR 408.

[46] AR 406.

[47] AR 32 (citing AR 363, 408).

[48] AR 32 (citing AR 363, 408, 366–70 (5/19/21: seeking emergency treatment for rib
pain, with notation that mood, memory, affect, and judgment were normal); AR

1

*iv.     The ALJ's analysis contains error.*

2     The ALJ's analysis fails to fairly examine the abnormal objective medical

3 evidence pertaining to Plaintiff's mental health. The ALJ "cherry picked" the

4 normal mental-health observations by giving undue weight to the normal mental-

5 health findings during brief physical-ailment appointments.[49] While the ALJ did

6 not misstate the objective findings in the medical records, he took them out of

7

8

9 399–400 (9/29/20: seeking to establish care; normal mood, affect, memory, and

10 judgment; referral to mental-health treatment), AR 389–91 (12/23/21: seeking

11 treatment for left leg pain, and noting appropriate mood and affect, cooperative,

12 good insight and judgment, and "Has PTSD and is seeking counselor and taking

13 quetiapine. Does not want to discuss today, though is very adamant about how her

14 life was ruined two years ago by a divorce where she lost everything.")).

15 [49] *See Diedrich v. Berryhill*, 874 F.3d 634, 641 (9th Cir. 2017) (noting that courts do

16 "not necessarily expect" someone who is not a mental-health professional to

17 document observations about the claimant's mental-health symptoms); *Orn v.*

18 *Astrue*, 495 F.3d 615, 634 (9th Cir. 2007) (requiring examination notes to be read in

19 their proper context); *see also Jajo v. Astrue*, 273 F. App'x 658, 660 (9th Cir. 2008)

20 (not reported) ("The ALJ relied on the lack of corroboration on the part of the

21 orthopedic consultant and various emergency room reports. However, the purpose

22 of those visits was not to assess [the claimant]'s mental health, and thus any lack

23 of corroboration is not surprising.").

context, and context is crucial because "treatment records must be viewed in light of the overall diagnostic record."[50] In addition, the ALJ failed to balance Plaintiff's normal mental-health observations by the therapists with their more relevant abnormal mental-health observations.[51]  For instance, even though Plaintiff demonstrated good hygiene during two of the December 2021 counseling sessions, she was observed with poor hygiene during the other counseling session, and during each of these three sessions she was irritable and needed to be redirected. Likewise, Dr. Schultz observed Plaintiff with minimal hygiene, dirty hair, and

---

[50] *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (finding the ALJ erred by rejecting the claimant's symptoms resulting from anxiety and depressive disorder on the basis that the claimant performed cognitively well during examination and was described as "upbeat," "smiling very brightly," and "more talkative about positive things").

[51] *See Garrison v. Colvin*, 759 F.3d 995, 1018 (9th Cir. 2014) ("While ALJs obviously must rely on examples to show why they do not believe that a claimant is credible, the data points they choose must in fact constitute examples of a broader development to satisfy the applicable 'clear and convincing' standard."); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (cleaned up) ("Although it is within the power of the Secretary to make findings concerning the credibility of a witness …, he cannot reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result.").

DISPOSITIVE ORDER - 16

significant anxiety and being distraught with recall impairment. The ALJ failed to meaningfully explain why the objective medical record, when fully and fairly considered, is inconsistent with Plaintiff's reports of irritability, agitation, and difficulties concentrating and remembering to do tasks.  Based on these errors, the ALJ's finding that Plaintiff's symptoms were not entirely consistent with the objective medical evidence is not a clear and convincing reason to discount her reported symptoms.

### b.    <u>Treatment: the lack of and noncompliance with treatment</u>

A claimant's course of treatment, including an inadequately explained failure to seek treatment, is a relevant factor for the ALJ to consider when assessing the claimant's symptom reports.[52] Yet, the ALJ must discuss whether the claimant had good cause for not seeking treatment, including whether a mental impairment contributed to her not seeking or complying with treatment.[53]

Here, the ALJ found the "record reflects a near-total failure to engage in any treatment—no regular treatment for any chronic conditions, and she engaged in

_____

[52] 20 C.F.R. § 404.1529(c)(3).

[53] *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1209–1300 (9th Cir. 1999) ("[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation."); *Fair v. Bowen*, 885 F.2d 597, 603–04 (9th Cir. 1989); Soc. Sec. Rlg. 18-3p: Titles II and XVI: Evaluation of Symptoms in Disability Claims.

mental health treatment for less than 4 months" and she was "noncompliant with treatment" by not picking up medication for months.[54] The ALJ mentioned that Plaintiff testified that she has health insurance and can pay for treatment or receive free mental health treatment, and the ALJ found that the 20-mile distance between Plaintiff's residence and treatment did not "impose a serious barrier to care."[55]

The ALJ accurately highlighted that Plaintiff participated in continuous mental-health treatment for only four months, however, the ALJ's analysis as to whether Plaintiff lacked good cause for her discounted treatment contains error. First, the ALJ's finding that the 20-mile distance did not impose a serious barrier to care is not supported. Plaintiff has no car and no driver's license and there is no evidence in this record that the tribe, the medical clinic, or other provider offers free transportation to medical appointments.[56] Expecting Plaintiff to walk 20 miles to access medical care is not reasonable. While the record reflects that Plaintiff was able to participate in mental-health counseling over the telephone and it is unclear why Plaintiff ceased such care; the ALJ did not fairly and fully assess whether such termination of services was due to Plaintiff's mental-health impairments or a

---

[54] AR 32.

[55] *Id.*

[56] AR 74, 225, 406–07.

lack of access.[57] Notably, Counselor Lilly commented that "even with dependable transportation and weekly visits, unless something has changed dramatically over the past several months I do not believe she can marshal the cognitive and emotional resources to begin trauma healing and recovery work at this point."[58]

         c.     *Reason for stopping work.*

       When assessing a claimant's credibility, an ALJ may consider whether the claimant has not worked for reasons unrelated to the alleged disability.[59] Here, the ALJ "note[d] that the claimant's last job ended for a non-disability reason," thereby "suggest[ing] that her ongoing unemployment is likewise not caused by disability."[60] This finding was made without any discussion of the evidence from medical sources contrary thereto:

- Counselor Lilly: "She had a successful career in the gaming industry and my hope was that she might recover enough to work in some capacity in the future. It is clear from the outset that recovery could be a long process[.] . . . I do not believe she can marshal the cognitive

---

[57] *See Garrison*, 759 F.3d at 1018 n.24 (holding an ALJ may not reject a claimant's symptom testimony based on a lack of treatment if "the record affords compelling reason to view such departures from prescribed treatment as part of claimant's underlying mental afflictions").

[58] AR 365.

[59] *See Tommasetti v. Astrue*, 533 F.3d 1040 (9th Cir. 2008); 20 C.F.R. § 404.1529 (work record can be considered in assessing reported symptoms).

[60] AR 32.

and emotional resources to begin trauma healing and recovery work at this point."[61]

- Dr. Schultz: "Her ability to follow and carry out complex instructions and respond adequately to changes in routine work settings would likely be hindered by her current, persistent symptomatology, particularly her difficulty with anxiety and additional symptoms of PTSD."[62]

Those treating and examining Plaintiff's mental health found that her mental abilities were impacted by her impairments. They did not question whether she was exaggerating symptoms or seeking disability benefits for non-impairment related reasons. That Plaintiff was fired after losing her gaming license is not a clear and convincing reason, supported by substantial evidence, to discount her reported symptoms.

### d.  *Medical opinions*

An ALJ may consider whether the claimant's symptoms are supported by the medical opinions.[63] Here, the ALJ found "[i]mportantly, no medical source has endorsed disabling physical or mental limitations."[64] To support this finding, the ALJ briefly summarized the opinions of the two psychologists who reviewed the record, Dr. Schultz's opinion, and Counselor Lilly's summaries.

---

[61] AR 364–65.

[62] AR 347.

[63] *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

[64] AR 32.

1    While it was appropriate for the ALJ to compare Plaintiff's symptom reports

2    against the medical opinions and Counselor Lilly's summaries, the ALJ's analysis

3    did not fully and fairly consider Dr. Schultz's observations and opinions nor

4    Counselor Lilly's observations and statements. First, as to Dr. Schultz, Dr. Schultz

5    opined that Plaintiff would struggle with "adapting her routine in a workplace

6    setting to incorporate new functions or processes that are outside her comfort level

7    due to her level of anxiety" and that her "[s]ocial interaction would likely be

8    inadequate."[65] The ALJ failed to meaningfully explain why these endorsed mental

9    limitations were not disabling, particularly given that the vocational expert

10    testified that an employee who needs reminders multiple times per day to do basic

11    job tasks would not be able to maintain employment.[66]

12    Second, as to Counselor Lilly, the ALJ found that Counselor Lilly's

13    summaries did not constitute a medical opinion and that, even if they did, the

14    summaries were of little value because they only applied to a 4-month period and

15    were not supported by contemporaneous treatment notes.[67] Although the ALJ

16    rationally found that Counselor Lilly's statements do not constitute a medical

17    opinion, this finding did not allow the ALJ to assign little value to Counselor Lilly's

18

19

20    [65] AR 347.

21    [66] AR 66–67.

22    [67] AR 33.

23

observations and concerns about Plaintiff's mental abilities.[68] Counselor Lilly's

written summaries support Plaintiff's mental-health symptom reports. For

instance, Counselor Lilly wrote that Plaintiff "has been very prone to go off on a

rant and become angry and aggressive. All rationality is lost."[69] He opined that

even participating in trauma informed treatment was not possible until Plaintiff

could "stabilize a bit."[70] Moreover, the fact that Counselor Lilly's summaries are

not supported by contemporaneous treatment notes is also not a reason to give

them little value, because the ALJ found persuasive the reviewing medical

opinions of Carol Moore, PhD, and Renee Eisenhauer, PhD, who did not author any

---

[68] The regulations provide that:

> [a] medical opinion is a statement from a medical source about what
> you can still do despite your impairment(s) and whether you have one
> or more impairment-related limitations or restrictions in the . . .
> ability to perform mental demands of work activities, such as
> understanding; remembering; maintain concentration, persistence, or
> pace; carrying out instructions; or responding appropriately to
> supervision, co-workers, or work pressures in a work setting.

20 C.F.R. § 404.1513(a)(2). While a medical source need not state a claimant's

limitations specifically in terms of mild, moderate, or marked limitation, the

medical source must explain how mental-health symptoms relate to limitations or

restrictions in the ability to perform mental demands of work activities. *Morgan v.

Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999).

[69] AR 363.

[70] *Id.*

contemporaneous treatment notes. In addition, that Counselor Lilly treated Plaintiff for only four months is not a reason to discount his observations and statements about Plaintiff's symptoms. The medical record reflects that Plaintiff's mental abilities negatively impacted her for longer than Counselor Lilly's 4-month interaction with her. Besides, the ALJ himself found Plaintiff's mental impairments lasted longer than 12 months.

By not fully and fairly considering Dr. Schultz's opinion and Counselor Lilly's summaries, the ALJ's decision to discount Plaintiff's symptom reports because no medical source endorsed disabling physical or mental limitations is not supported by substantial evidence.

### 3.  Consequential error

The ALJ's failure to articulate clear and convincing reasons supported by substantial evidence for discounting Plaintiff's reported difficulties concentrating, focusing, and managing her agitation and irritability is consequential. Plaintiff's reported symptoms would prohibit her from performing and sustaining full-time work with occasional, superficial contact with the public and coworkers.[71]

## B.   Medical Opinions: The Court finds the issue moot.

Plaintiff argues the ALJ failed to properly evaluate Dr. Schultz's examining opinion and Counselor Lilly's summaries. As discussed above, the ALJ failed to give valid reasons for discounting Plaintiff's reported symptoms. Because the ALJ's

---

[71] AR 31, 63.

erroneous evaluation of Plaintiff's symptom reports impacted his evaluation of the medical opinions, the ALJ is to reevaluate the medical opinions on remand. When doing so, the ALJ is to 1) determine whether to seek clarification from Dr. Schultz as to Plaintiff's ability to maintain concentration, persistence, and pace, *and/or* order an updated consultative psychological examination, and 2) obtain testimony from a psychologist as to Plaintiff's impairment-related limitations in her ability to perform work activities.[72]

**C.    Remand: further proceedings.**

Plaintiff submits a remand for payment of benefits is warranted. The decision whether to remand a case for additional evidence, or simply to award benefits, is within the discretion of the court."[73] When the court reverses an ALJ's decision for error, the court "ordinarily must remand to the agency for further proceedings."[74]

Here, further development is necessary for a proper disability determination. The ALJ is to seek clarification from Dr. Schultz as to her opined work limitations and/or order another psychological consultative examination,

---

[72] *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003) (discussing that the ALJ has a duty to fully and fairly develop the record in order to make a fair determination as to disability).

[73] *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987).

[74] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017).

obtain testimony from a medical expert pertaining to Plaintiff's mental

impairments, and reevaluate Plaintiff's disability claim. To ensure Plaintiff has a

fair hearing on remand, the Court finds it prudent to direct that the Social Security

Administrative assign this matter to a different ALJ.[75]

### IV.    Conclusion

Plaintiff establishes the ALJ erred. A different ALJ is to develop the record

and reevaluate—with meaningful articulation and evidentiary support—the

sequential process.

Accordingly, **IT IS HEREBY ORDERED**:

1.    The ALJ's nondisability decision is **REVERSED, and this matter is REMANDED to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g)**. <u>This case is to be assigned to a different ALJ on remand.</u>

2.    The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 8 and 12**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and

provide copies to all counsel.

DATED this 7th day of December 2023.

*Edward F. Shea*

EDWARD F. SHEA
Senior United States District Judge

---

[75] *See* 20 C.F.R. § 404.940; *Reed v. Massanari*, 270 F.3d 838, 845 (9th Cir. 2001).